June R. Spruiell appeals from a judgment entered in favor of the plaintiff, the estate of Ommie Bryant, in the amount of $61,828.38 plus interest, and voiding a contract for the sale of Mrs. Bryant's Queenstown Road farm. We affirm.
Mrs. Bryant died intestate on January 11, 1987, due to complications arising from cancer. Her husband, Harry Bryant, had predeceased her in 1982. There were no children from their marriage. Mrs. Bryant was survived by a brother, two sisters, and approximately 40 nieces and nephews who were children of her deceased brothers and sisters; Mrs. Spruiell was a niece of Mrs. Bryant, but her mother, Myrtle Robinson, survived Mrs. Bryant.
Mrs. Bryant's estate consisted of her personal effects, as well as the following assets: a residence in Trussville, Alabama; a farm in Trussville; and 4 accounts at the Trussville office of City Federal Savings Loan Association. Three of these accounts were opened by Mrs. Bryant in May 1986, solely in her name. On September 5 and 9, 1986, these three accounts were converted to joint tenancy with right of survivorship in the names of Mrs. Bryant and Mrs. Spruiell. A fourth account was opened at this time in the names of Mrs. Bryant and Mrs. Spruiell as joint tenants with right of survivorship. The money deposited into these accounts apparently was contributed solely by Mrs. Bryant, and Mrs. Spruiell made no contributions to, or withdrawals from, the accounts during Mrs. Bryant's lifetime. The balance of these four accounts totalled $61,828.38 as of the date of Mrs. Bryant's death. Mrs. Spruiell closed all four accounts on January 12, 1987, withdrawing the balance of all four accounts — $61,828.38.
Edgar S. Robinson, Mrs. Bryant's brother, was appointed as the administrator of her estate on January 29, 1987. After the administration of the estate was removed from the probate court to the circuit court, Mr. Robinson filed a complaint on June 17, 1987, seeking to recover the proceeds of four City Federal accounts from Mrs. Spruiell. Robinson alleged that Mrs. Spruiell had exerted undue influence on Mrs. Bryant in order to have her name placed on the accounts and to have the accounts converted to joint tenancies with right of survivorship. The trial court, after hearing ore tenus evidence, found that: (1) a confidential relationship had existed between Mrs. Spruiell and Mrs. Bryant and Mrs. Spruiell was the "dominant spirit" in that relationship; (2) Mrs. Bryant placed Mrs. Spruiell's name on the bank accounts as a result of undue influence exerted on her by Mrs. Spruiell; and (3) Mrs. Bryant executed the contract to sell the farm on Queenstown Road in Jefferson County, Alabama, as a result of undue influence exerted on her by Mrs. Spruiell and her husband, Jerry Spruiell. The court set that contract aside and entered a judgment in favor of Mrs. Bryant's estate in the amount of $61,828.38 plus interest at 6% per year from January 12, 1987, until the date of the final judgment, and, after the date of the final judgment, at an interest rate of 12% per year.
Mrs. Spruiell raises the following issues in her appeal: (1) Whether the trial court's refusal to allow her to call a psychiatrist as an expert to testify in her behalf was so prejudicial as to warrant a new trial; (2) whether the findings of fact by the trial court, upon which the final judgment was based, are so plainly and palpably wrong as to warrant a reversal; and (3) whether the judgment is contrary to the great weight of the evidence and will be allowed to stand. We will address Mrs. Spruiell's attacks on the trial court's findings of fact before reaching the question of the expert testimony.
At the outset, we point out that the findings made by a trial court carry with them a presumption of correctness under the ore tenus rule. As this Court has held *Page 510 
on numerous occasions, where the trial court, without a jury, hears ore tenus evidence its judgment is presumed to be correct and will be reversed only if it is found to be unsupported by the evidence or to be plainly and palpably wrong, after a consideration of all the evidence and after making all reasonable inferences from that evidence. See, e.g., Copelandv. Richardson, 551 So.2d 353 (Ala. 1989); McCoy v. McCoy,549 So.2d 53 (Ala. 1989); Knox Kershaw, Inc. v. Kershaw,552 So.2d 126 (Ala. 1989); Ford v. Jackson Square, Ltd., 548 So.2d 1007
(Ala. 1989); City of Birmingham v. Sansing Sales of Birmingham,Inc., 547 So.2d 464 (Ala. 1989). Furthermore, this Court will not substitute its own view of the evidence for that of the trial court. Cummings v. Hill, 518 So.2d 1246 (Ala. 1987);Storey v. Patterson, 437 So.2d 491 (Ala. 1983).
In the present case, the trial judge heard ore tenus evidence and made his findings based on that evidence. The trial court's judgment, based on findings that a confidential relationship existed between Mrs. Bryant and Mrs. Spruiell, that Mrs. Spruiell was the dominant figure in that relationship, and that Mrs. Spruiell exerted undue influence on Mrs. Bryant in order to have the bank accounts converted into joint accounts with rights of survivorship, are presumed correct and will not be disturbed on this appeal unless they are plainly and palpably erroneous. With this presumption in mind, we address the specific issues raised by Mrs. Spruiell, who attacks the trial court's findings.
Mrs. Spruiell attacks paragraphs 2, 6, 7, and 9 of the trial court's findings as plainly and palpably wrong, and she argues that the judgment is contrary to the weight of the evidence. The trial court's final judgment contained the following findings of fact relevant to this appeal:
 "2. Mrs. Bryant spent some time in a hospital in 1979 and was diagnosed as having, among other things, organic brain impairment. Tests given to Mrs. Bryant at that time showed her pro-rated verbal IQ to be 67 which is in the range of mild mental retardation. The evidence shows that it was likely that Mrs. Bryant had previously had a higher IQ and that the 67 score was the result of the organic brain impairment.
". . . .
 "6. June Spruiell ('Mrs. Spruiell') testified that in May 1986 all of Mrs. Bryant's bank accounts were solely in Mrs. Bryant's name. On May 1, 1986, with Mrs. Spruiell's help, Mrs. Bryant opened two accounts at City Federal and placed Mrs. Spruiell's name on the account with hers, with right of survivorship. On September 5, 1986, Mrs. Bryant opened a fourth account at City Federal and put Mrs. Spruiell's name on the account with right of survivorship. These are the four bank accounts which totalled $61,828.38 at Mrs. Bryant's death. Mrs. Spruiell withdrew all of the money and closed the accounts on January 12, 1987, the day after Mrs. Bryant died.
 "7. At the time the new bank accounts were opened, Mrs. Bryant did not read the provisions on the back of the signature cards which related to the survivorship provision. No one read the survivorship provisions to Mrs. Bryant and no one told her about them. There was nothing on the front of the signature cards which mentioned the survivorship provisions.
". . . .
 "9. During her lifetime, Mrs. Bryant was close to her family. She was particularly close to her niece, Mrs. Spruiell, and Mrs. Spruiell's husband, Jerry. She took vacations with the Spruiells and relied upon them for help and advice. Mr. Spruiell had a law degree and on at least two occasions prepared legal documents for Mrs. Bryant. Once when she made an offer to buy a house, which offer was not accepted, and then he prepared the contract for the sale of the farm on Queenstown Road. Mrs. Spruiell took Mrs. Bryant to the doctor and to the hospital for radiation treatments and to take care of her banking needs. Other nieces and nephews also took Mrs. Bryant to the doctor and other places but from the evidence the Court finds that *Page 511 
the Spruiells had the closest relationship with Mrs. Bryant.
". . . .
 "Based upon the above, and the other testimony and evidence presented to the Court, the Court finds that a confidential relationship existed between Mrs. Spruiell and Mrs. Bryant and that Mrs. Spruiell was the dominant spirit in that relationship. The Court further finds that undue influence was exerted on Mrs. Bryant by Mrs. Spruiell in order to get Mrs. Bryant to add Mrs. Spruiell's name to the bank accounts with the right of survivorship. It is further the opinion of the Court that due to Mrs. Bryant's mental and physical condition, and to the failure of anyone to tell Mrs. Bryant about the survivorship provisions which were located on the back of the bank signature card, the creation of a survivorship interest in the bank accounts was the result of a mistake by Mrs. Bryant.
 "The Court finds that undue influence was exerted on Mrs. Bryant by June Spruiell and Jerry Spruiell in order to get Mrs. Bryant to execute the contract to sell the Spruiells the Queenstown Road farm for $40,000.00."
After an examination of the record and all of the evidence, we conclude that the findings made by the trial court are supported by the evidence. The evidence tended to show that Mrs. Bryant's mental condition had deteriorated. While Mrs. Bryant was in a deteriorated mental condition, Mrs. Spruiell assisted her in the conversion of several of her accounts to joint accounts with right of survivorship, without informing her of the consequences of the survivorship provisions. Furthermore, Mrs. Bryant and the Spruiells were very close, and it appeared that the Spruiells used their past relationship with Mrs. Bryant to purchase the Queenstown Road farm at a substantially reduced price. Based on these facts, it is clear that there was substantial evidence to raise the inference that the Spruiells exerted undue influence on Mrs. Bryant in the conversion of her bank accounts. The trial court's finding of undue influence is further supported by the fact that Mrs. Spruiell never made any contributions to or withdrawals from the accounts until Mrs. Bryant's death, at which time she closed the accounts and withdrew the entire balance of all four accounts. We conclude, therefore, that the trial court's finding of undue influence is supported by the evidence.
Mrs. Spruiell also argues that the trial court erroneously refused to allow her to call a psychiatrist, Dr. Gary Hodges, as an expert to testify in her behalf, and that this refusal was so prejudicial as to warrant a new trial. We disagree.
The parties apparently entered into a pretrial agreement to furnish the names of the witnesses each side intended to call. After the trial had begun, counsel for the plaintiff served interrogatories on Mrs. Spruiell asking for the names of any additional witnesses she intended to call. Mrs. Spruiell did not provide these names and made no objection to the interrogatories; counsel for the plaintiff filed a motion to compel. Mrs. Spruiell then filed an objection and a motion to quash. After a hearing on the objection and the motion, the trial court ordered Mrs. Spruiell to provide the names of the witnesses as requested by the plaintiff. The trial court's order stated, in part:
 "[T]he Court . . . does hereby ORDER . . . that Defendant . . . supplement the list of witnesses to include all that may be fact witnesses in this case. The Defendant is allowed a period of 14 days in which to answer."
When Mrs. Spruiell called Dr. Hodges, the expert witness in question, opposing counsel objected on the grounds that the witness's name did not appear on any list provided to them by Mrs. Spruiell. The trial judge sustained the objection, because the witness's name did not appear on any list provided to plaintiff's counsel.
Mrs. Spruiell now argues that the trial court's order required only that she provide the names of fact witnesses she intended to call; that this psychiatrist was not offered as a fact witness; and that she therefore was not required by the order to provide his name to opposing counsel. Mrs. Spruiell's *Page 512 
interpretation of the trial court's order is incorrect.
Given the parties' prior agreement to exchange the names of all witnesses they intended to call and the fact that Mrs. Spruiell had previously provided a list of all witnesses she intended to call, fact or otherwise, her reading of the trial court's order as requiring her to provide only fact witnesses is without merit. A reading of the trial court's order demonstrates that the order required that the names of any additional witnesses, including fact witnesses, be provided. We conclude that the trial court's refusal to allow this witness to testify was proper.
The trial court's judgment in favor of the estate of Ommie Bryant is affirmed.
AFFIRMED.
HORNSBY, C.J., and ALMON, STEAGALL and INGRAM, JJ., concur.