MADDOX, Justice.
This appeal involves a dispute between a church and a paving company relating to a contract to pave a parking lot at the church. The case was tried without a jury. The church appeals from a judgment for the company. We affirm conditionally.
FACTS
The evidence tended to show that the pastor of Luverne Church of God, Greg Melvin, negotiated with Junior Harrison, a representative of Hooper, Inc. (“Hooper”), to have the parking lot of the church paved. Harrison testified that he explained to Melvin the two options available: one was referred to as a “plant mix treatment,” and a cheaper option was referred to as a “surface treatment.”[1] According to Harrison, Melvin said that the church was working on a tight budget and that the church had decided to use the cheaper surface treatment. The work was completed on November 9, 1989. Approximately a week to a week and a half after the paving was completed, there was a rain in the area. Melvin described the rain as “moderate”; Junior Harrison described it as a “bad storm.” The day after this rain, the church began experiencing problems with the pavement. Witnesses testified that the pavement felt “spongy” and “soft to the touch.” Melvin testified that the asphalt was sticking to the shoes of the church members and was being tracked into the church’s new sanctuary. He claimed that the pavement was so soft that the tires of automobiles were actually sinking into it. He also testified that there were holes in the pavement and that the pavement washed away in places.
Melvin testified that he notified Hooper about the problem, and that when the church received a bill from Hooper for the paving work, the church refused payment until the parking lot was repaired. Hooper sent crews to the church on two occasions and it requested to come a third time to perform the repair work on the parking lot, but it was not allowed to do the repair work. Melvin testified that he refused the repair work because Hooper wanted to repair only a couple of spots, while, Melvin said, the whole parking lot was defective and needed repaving.
Hooper sued to collect payment for the work, and the church counterclaimed, alleging a misrepresentation of the quality of paving that it was to receive and seeking to recover for the cost of repairs that it had made to the parking lot. The trial court entered a judgment for Hooper in the amount of $10,763.00, the agreed upon contract price, but included the following condition: “Hooper shall perform and com- *1018 píete the repairs which were originally contemplated to be made on the parking lot of the defendant to the extent presently possible within forty-five days from the date of this judgment.”[2]
I
We first consider Hooper’s claim against the church for payment of the contract price and the church’s counterclaim alleging misrepresentation.
The church argues that Hooper breached its contract by not using the proper material to pave the parking lot and by not compacting the base material sufficiently; the church claims that these two shortcomings caused the problems with the parking lot. It claims that Hooper’s breach was material and that the church was, therefore, excused from further performance under the contract; specifically, the church claims that it was excused from paying the full contract price.
Pastor Melvin stated that when he and Harrison were negotiating for the paving job, he asked Harrison about the difference in quality of the different options and that Harrison stated that “one would be as good as the other.” He contends that Harrison never referred to the cheaper type as a “surface treatment,” but referred to it as “a cheaper grade of asphalt.” Melvin testified that Harrison represented to him that this cheaper type of application was commonly put on parking lots and that “they had done several.” Melvin stated that Harrison never said that the drainage around the parking lot would be a problem, but that Harrison merely explained to him the way in which the parking lot would have to be laid out in order for the water to drain to the ditch.
Doug Eiland, an employee for Quality Assurance Testing Laboratory, testified, as an expert witness for the church, that although he had seen this kind of treatment used on many roads, he had never seen a church or commercial parking lot paved with this kind of surface. Eiland testified that Hooper failed to properly compact the base of the parking lot and that that failure caused the problem, and that Hooper used an inferior type of clay in the base and that the type of clay used by Hooper normally was not used when paving.
Hooper denied that any of problems experienced by the church resulted from faulty work. Hooper claimed that the problems were caused by heavy rains. John Scott Hooper, president of Hooper, said that he received no complaints from the church until after the Elba flood in the spring of 1990,[3] but this testimony was disputed by witnesses who said that Junior Harrison was advised as early as November 1989 of problems with the paving.
Mr. Hooper testified that his company offered to install a curb and flume for $343. He said that a curb and flume normally go with a job like this and that this curbing would have controlled the problem of erosion, but that Melvin had refused the erosion control measure because of the church’s inadequate funding. Hooper testified that there was no problem with the clay that was used in the base; he claimed that “[i]t’s fine for this type project.” He claimed that the problems associated with the parking lot’s becoming spongy and soft were probably caused by groundwater from a higher elevation saturating the soil underneath the pavement. He testified that the problem could have been fixed by placing around the perimeter of the pavement a drain tile that would have caught *1019 the moisture and drained it a different direction.
Mr. Hooper testified that each of the two trips made by his crews to the church was for the purpose of “correcting any and every problem on the parking lot.” He claims that he made a third attempt to correct the problem, in which he requested to come personally to make the repairs, but that Melvin gave him notice not to come.
Where the trial court has heard ore tenus evidence, as in this case, its judgment is presumed to be correct, and its judgment will be reversed only if, after considering the evidence and all reasonable inferences to be drawn from it, the appellate court finds the judgment to be unsupported by the evidence or plainly or palpably wrong. Spruiell v. Robinson, 582 So.2d 508, 510 (Ala.1991). “Furthermore, '[tjhis Court ... will affirm the trial judge’s decision if, under any reasonable aspect, it is supported by any credible evidence. ’ ” Humphries v. Whiteley, 565 So.2d 96, 102 (Ala.1990), quoting Chism v. Hicks, 423 So.2d 143, 144 (Ala.1982). (Emphasis added in Hum-phries.)
We, therefore, affirm Hooper’s judgment on its contract claim, but we do so conditionally, for reasons set out in Section II.
II
The church next contends that the trial court erred by not granting its “Motion for Clarification of Judgment.” The trial court, in its judgment, stated as a condition of its judgment that “Hooper shall perform and complete the repairs which were originally contemplated to be made on the parking lot of the defendant to the extent presently possible within forty-five days from the date of this judgment.” The church asked the trial court on October 10,1991, to clarify this order but its motion was denied.
We conclude that the trial court should have clarified the order. We agree with the church that the order was vague with regard to Hooper’s obligations to repair the parking lot, and we agree that the trial court should have clarified what it meant by the phrase “to the extent presently possible.” The church contends that neither party can determine its obligations under the order as it reads now. The church claims that the order is further complicated by the fact that, since the time of the trial, Hooper has gone out of the paving business.
John Scott Hooper testified at trial that his company could not now make the repairs originally contemplated because the church had subsequently spread pea gravel over the pavement in an effort to remedy the problem. Hooper submits that the trial court added the last part of the phrase “to the extent presently possible” to serve as a reprimand to the church for not allowing Hooper to repair the parking lot when it attempted to do so on three occasions.
Hooper contends, in the alternative, that, should this Court determine, as it does, that the trial court erred in failing to clarify its order relating to the obligations of the parties, this Court should order a remit-titur in an amount between $1,000 and $1,500, rather than requiring Hooper, now out of the paving business, to hire someone to repair the parking lot. Mr. Hooper had testified at trial that the cost of making such repairs would be between $1,000 and $1,500. Hooper contends that, under the circumstances, a remittitur would be the most equitable solution. We agree.
At the hearing on a “Motion for Clarification of Judgment” filed by Hooper, the attorney for the church responded to Hooper’s contention that requiring Hooper to repair the parking lot would be impractical; the church’s attorney said, “We believe if you’re going to take [Hooper’s obligation to repair the parking lot] out then the $1,500 would be the credit due the church.” On appeal, the church’s counsel also states that if we do not grant a new trial, we should at least require the trial court to clarify its order.
Based on the considerations stated above, we conclude that the most equitable solution in this situation is to order a remit-titur of the plaintiff’s judgment in the agreed-upon amount of $1,500.
*1020 We, therefore, condition our affirmance on the plaintiff’s acceptance of a remittitur of $1,500. If Hooper should fail to file in this Court within 28 days of the date of this opinion its acceptance of a remittitur in the amount of $1,500, then the judgment will be reversed and a new trial ordered.
AFFIRMED CONDITIONALLY.
HORNSBY, C.J., and SHORES, HOUSTON and KENNEDY, JJ., concur.

. The "plant mix treatment” is similar to the type of asphalt used on state highways. The "surface treatment" is similar to that used on county roads.

. The church appealed on February 5, 1992. However, the cause was remanded to the trial court for resolution of the church’s counterclaim, which was not ruled upon in the trial court’s original order of September 17, 1991. The trial court entered an amended judgment on June 22, 1992, finding in favor of Hooper, Inc., on its claim, and finding against the church on its counterclaim.

. The term “Elba flood” refers to a March 1990 flood that caused considerable damage in south Alabama, particularly at the town of Elba in Coffee County. In the rains that caused the flood, Crenshaw County received 17 inches of rainfall on March 16. The flood caused extensive damage to roads and bridges in Crenshaw County, and the Federal Emergency Management Administration declared Crenshaw County a disaster area. Total damage and loss in the county were estimated at $2,300,000.