This appeal is from an order of the Probate Court of Jefferson County recognizing Betty P. Richardson as the common law wife of the late William H. Richardson. Brenda Copeland, the daughter of the deceased, appeals from the trial court's determination.
Betty and William Richardson were formally married from 1974 to 1981. Approximately one year after their divorce in 1981, Betty moved back in with William, where she lived until his death in 1987. Upon William's death, his daughter, Brenda Copeland, was issued letters testamentary, and William's will was admitted to probate. Betty Richardson subsequently filed a petition to remove Brenda as executrix, alleging that she, Betty, was William's common law wife.[1]
The trial court, after conducting a nonjury trial, found that a valid common law marriage existed between William and Betty. This appeal ensued.
The trial court heard ore tenus evidence; therefore, a strong presumption is indulged in favor of the findings of fact made by the trial judge. The court's findings will not be disturbed unless they are unsupported by the evidence or are found to be plainly and palpably wrong. Martin v. Slayton, 428 So.2d 23
(Ala. 1983); Morrow v. Wood, 411 So.2d 120 (Ala. 1982). The appellant contends that the ore tenus standard is not applicable because the evidence before the trial court was not disputed. This contention is based upon a fragment from the trial court's order that reads "the facts heard ore tenus are without dispute." However, when viewed in context, this portion of the trial judge's order merely refers to some of the specific facts presented, not to the evidence as a whole. We find that there was conflicting evidence presented on the main issues; therefore, the ore tenus standard is applicable to those issues.
The elements of a valid common law marriage in Alabama are: (1) capacity; (2) present agreement or consent to be husband and wife; (3) public recognition of the existence of the marriage; and (4) cohabitation or mutual assumption openly of marital duties and obligations. Coleman v. Aubert,531 So.2d 881 (Ala. 1988).
The appellant contends that in situations such as the present one, where the parties have previously been formally married to each other and then have been divorced, the parties are presumed to be well acquainted with marriage by ceremony and, therefore, the law presumes that they would use this method to express a present intent to be husband and wife. She cites *Page 355 
as authority a line of cases beginning with Turner v. Turner,251 Ala. 295, 37 So.2d 186 (1948). See also Whitworth v.Whitworth, 256 Ala. 296, 54 So.2d 575 (1951); and Goodman v.McMillan, 258 Ala. 125, 61 So.2d 55 (1952), cert. denied,345 U.S. 929, 73 S.Ct. 789, 97 L.Ed. 1359 (1953). Turner, supra, and its progeny do indeed emphasize the necessity of present intent to remarry in common law marriages involving parties once before married to each other; however, contrary to the appellant's assertions, these cases do not place a special burden on such couples not required of couples who have not before been married to each other. Those cases emphasize that mere reunification after a divorce is not enough, but that all of the elements of common law marriage must be proven. We apply those same principles here.
This Court has recognized valid common law marriages between parties who were once formally married to each other, when the proof has been sufficient to establish common law relationships. See Skipworth v. Skipworth, 360 So.2d 975 (Ala. 1978); Huffmaster v. Huffmaster, 279 Ala. 594, 188 So.2d 552
(1966).
We have reviewed the evidence and find that there was ample evidence presented to support the trial court's determination that Betty and William expressed their present intent to become married upon their reunification. Betty testified that William asked her to "come and be my wife." Betty promised at that time that she would try harder to get along with William's daughters. The appellants argue that this promise by Betty made the relationship conditional and showed a lack of present intent to be married. However, Betty's promise might also be interpreted as an expression of a good faith intention to make the marriage work. Although the evidence was conflicting concerning the other elements of common law marriage, there was evidence presented to support the trial court's determination. Several witnesses testified that William and Betty were recognized in the community as husband and wife. William spoke of Betty as his wife on several occasions. They maintained a joint bank account and traveled together. They cohabitated and shared marital duties for approximately five years after their divorce.
The ore tenus rule is uniquely applicable to just this type of case. The trial court's conclusion from the evidence will not be overturned when it is so well supported by the evidence and when the trial court had the added advantage of seeing and hearing the witnesses.
The trial court did not err; therefore, the judgment is due to be, and it hereby is, affirmed.
AFFIRMED.
HORNSBY, C.J., and JONES, ALMON, SHORES, ADAMS, HOUSTON, STEAGALL and KENNEDY, JJ., concur.
[1] In his will, William provided for the appointment of his "wife" as executrix. In her petition for probate of the will, Brenda Copeland stated that Betty and William were divorced. Based upon this assertion and the fact that Brenda Copeland was named as an alternate executrix, Brenda was named the executrix. Betty contends that she should be named executrix because she was William's "wife" at the time of his death.