THOMAS, Judge.
Melissa Melton appeals from a judgment of the Mobile Probate Court determining that Thomas Jenkins and Mary Melton were married at common law.
Mary Melton died on October 29, 2007. Melissa Melton, Mary’s daughter, was appointed by the-probate court as the personal representative of Mary’s estate on February 1, 2010. Jenkins then filed a claim for exemptions and claimed to be Mary’s surviving spouse by virtue of a common-law marriage. Melissa answered Jenkins’s motion, denying that Mary and Jenkins had been married at common law. In response, Jenkins moved the probate court to determine Mary’s heirs at law. The probate court held a trial on March 17, 2011, and April 5, 2011, on the issue whether Mary, and Jenkins had been married at common law. On May 25, 2011, the probate court entered a judgment determining that Mary and Jenkins had been married at common law and that Jenkins was Mary’s surviving spouse. Melissa filed a postjudgment motion, which the probate court denied as to the merits but granted insofar as she requested that the probate court certify its judgment as final pursuant to’ Rule 54(b), Ala. R. Civ. P. Melissa subsequently appealed to this court. We transferred the appeal to the Alabama Supreme Court because we lacked subject-matter jurisdiction over the appeal; our supreme court transferred the appeal back to this court pursuant to § 12-2-7(6), Ala.Code 1975.
The Alabama Supreme Court stated in Lofton v. Estate of Weaver, 611 So.2d 335, 336 (Ala.1992):
“ ‘Courts of this state closely scrutinize claims of common law marriage and require clear and convincing proof thereof.’ Baker v. Townsend, 484 So.2d 1097, 1098 (Ala.Civ.App.1986), citing Walton v. Walton, 409 So.2d 858 (Ala.Civ.App.1982). A trial judge’s findings of facts based on ore tenus evidence are presumed correct, and a judgment based on those findings will not be reversed unless they are found to be plainly and palpably wrong. Copeland v. Richardson, 551 So.2d 353, 354 (Ala.1989). The *107 trial court’s judgment must be viewed in light of all the evidence and all logical inferences therefrom, and it ‘will be affirmed if, under any reasonable aspect of the testimony, there is credible evidence to support the judgment.’ Adams v. Boan, 559 So.2d 1084, 1086 (Ala.1990) (citation omitted).”
Clear and convincing evidence is
“ ‘[ejvidence that, when weighed against evidence in opposition, will produce in the mind of the trier of fact a firm conviction as to each essential element of the claim and a high probability as to the correctness of the conclusion. Proof by clear and convincing evidence requires a level of proof greater than a preponderance of the evidence or the substantial weight of the evidence, but less than beyond a reasonable doubt.’
“§ 6 — 11—20[ (b) ](4), Ala.Code 1975.”
L.M. v. D.D.F., 840 So.2d 171, 179 (Ala.Civ.App.2002).
“In Alabama, recognition of a common-law marriage requires proof of the following elements: (1) capacity; (2) present, mutual agreement to permanently enter the marriage relationship to the exclusion of all other relationships; and (3) public recognition of the relationship as a marriage and public assumption of marital duties and cohabitation. Stringer [v. Stringer ], 689 So.2d [194,] 195 [ (Ala.Civ.App.1997) ], quoting Crosson v. Crosson, 668 So.2d 868, 870 (Ala.Civ.App.1995), citing Boswell v. Boswell, 497 So.2d 479, 480 (Ala.1986). Whether the essential elements of a common-law marriage exist is a question of fact. Stringer, supra, citing Johnson v. Johnson, 270 Ala. 587, 120 So.2d 739 (1960), and Arrow Trucking Lines v. Robinson, 507 So.2d 1332 (Ala.Civ.App.1987). Whether the parties had the intent, or the mutual assent, to enter the marriage relationship is also a question of fact. See Mickle v. State, 21 So. 66 (1896).”
Gray v. Bush, 835 So.2d 192, 194 (Ala.Civ.App.2001).
Melissa first argues that Mary lacked the capacity to marry Jenkins on September 7, 1996, the date Jenkins asserts he and Mary entered into a common-law marriage, because, she says, on that date Mary had not been divorced from her previous husband for more than 60 days. Melissa introduced into evidence Mary’s divorce judgment from her previous husband, which was dated August 1, 1996, and contained a provision prohibiting either party to the marriage from marrying another person until 60 days had elapsed from the date of the entry of the divorce judgment. See § 30-2-10, Ala.Code 1975 (“When a judgment has been entered granting a divorce in this state, the court shall order that neither party shall again marry, except to each other, until 60 days after the judgment is entered, and that if an appeal is taken within 60 days, neither party shall again marry, except to each other, during the pendency of the appeal.”).
In support of her argument on appeal, Melissa cites Brand v. State, 242 Ala. 15, 6 So.2d 446 (1941), in which the Alabama Supreme Court held that a marriage contracted in violation of a statutory prohibition such as the one provided in § 30-2-10 is void. 242 Ala. at 18, 6 So.2d at 449. However, in Krug v. Krug, 292 Ala. 498, 501, 296 So.2d 715, 718 (1974), our supreme court held that “[i]t is the well-settled rule that if parties in good faith marry when in fact a legal impediment exists to their marriage, and they continue to cohabit as man and wife after the removal of the impediment to their lawful union, the law presumes a common-law marriage.” Thus, although a legal impediment existed on the date that Jenkins claims that he and Mary entered into a *108 common-law marriage, if Jenkins and Mary demonstrated a present, mutual agreement to permanently enter the marriage relationship to the exclusion of all other relationships and then continued to act in a way that garnered public recognition of the relationship as a marriage together with a public assumption of marital duties and cohabitation after the legal impediment was removed, Mary and Jenkins’s relationship could be considered a common-law marriage. The key question on appeal thus becomes whether clear and convincing evidence exists demonstrating that Mary and Jenkins acted in way to garner public recognition of their relationship as a marriage through public assump-. tion of marital duties and cohabitation.
Jenkins initially claimed that he had met Mary in late 1995 and then married her in early 1996 in an unofficial ceremony,[1] which had been officiated by a minister in Coden. Jenkins testified that he and Mary began living in Mary’s house thereafter. Later, when confronted with conflicting testimony that he had given in his deposition, Jenkins testified that he meant to state that the minister was from Coden and that the ceremony had been conducted at Mary’s house on September 7, 1996. Jenkins could not remember the name of the minister, stating that he was an acquaintance of Mary’s. Jenkins stated in his deposition that the only persons present at the ceremony were the minister, Mary, and himself; however, Jenkins testified at trial that the minister’s wife and a husband and wife who were Mary and Jenkins’s friends were also present. Jenkins could not recall the names of the friends. Jenkins further stated that he and Mary began living in Mary’s house following the September 7, 1996, ceremony.
In contrast, Heather Patterson, Mary’s granddaughter, testified that she was living in Mary’s house from 1995 through the spring of 1997. She testified that Jenkins did not live in Mary’s house at any time while she was living there. However, it is clear that Jenkins did begin living with Mary at some point in time and continued to live with her in her house until she died on October 29, 2007. Mary’s appointment calendar for 1998, which was introduced into evidence, contains a notation that she had “met” Jenkins on September 7, 1996, as opposed to marrying him on that date; it also has a notation on September 7, 1998, that states “met 1996, our anniversary.” Jenkins also stated that he and Mary wore wedding rings. Jean Love, a longtime friend of Mary’s, testified that she saw Mary wearing a wedding ring only once, about one month before her death in 2007 and after Mary could no longer speak due to the progression of her Alzheimer’s disease; Love stated that Jenkins also told her at that time that he and Mary were married, which was the only time Love had heard that Mary and Jenkins were married.
Jenkins testified that he and Mary did not jointly own any real property, personal property, or credit cards. Jenkins also testified that he and Mary did not file any joint tax returns, saying that he had received a letter from the Internal Revenue Service in 1996 stating that he no longer needed to file tax returns; he said that he was unsure of how Mary listed her marital status on her tax returns. Jenkins stated that he and Mary had a joint checking account and a joint savings account; however, he did not provide any documentary evidence of their existence.
Jenkins testified that Mary did not take his last name, although he stated that she would use it “on occasion.” Despite his *109 acknowledgment that Mary did not take his last name, Jenkins had Mary’s name listed on her death certificate as “Mary Majors Melton Jenkins.” Jenkins also caused her name to be listed in her 'obituary with the last name “Jenkins.”
Jenkins introduced into evidence four greeting cards to support his claim that he and Mary had considered themselves to be married to each other. The first was a Valentine’s Day card that was undated and that did not mention Jenkins by name; Jenkins testified that the Valentine’s Day card was from 2000. The envelope, which Jenkins stated went with the Valentine’s Day card, stated “To my Husband” on it; it also did not mention Jenkins by name. The second card was an undated birthday card that was signed by Mary. The envelope that Jenkins said accompanied the birthday card stated “To My Husband” on its front; neither the birthday card nor the envelope referenced Jenkins by name. The third card was signed by Mary and was accompanied by an envelope that stated “Love To My Tom” on its front. The fourth card was an anniversary card that was titled “With Love to My Husband on Our Anniversary” and was signed by Mary; the card did not mention Jenkins by name and was not dated. An envelope, which Jenkins stated went with the card, had “Sept. 7th Tom Happy Anniversary” on its front.
Jenkins introduced into evidence two sets of forms associated with insurance applications. The forms in the first set were titled “Seniors First” and were signed, respectively, by Jenkins and Mary in November 2004. The insurance-application forms for Jenkins and Mary each had a box checked that was labeled “married.” Jenkins testified at trial that he and Mary had filled out the application forms at Mary’s house in the presence of the insurance agent; however, in his deposition he had stated that the insurance agent had filled out the forms. The second set of insurance-application forms were for “Medicare Complete” and were signed by Jenkins and Mary in March 2004. The second set of forms, like the first set, had a box checked that was labeled “married.”
Jenkins also introduced into evidence two letters in support of his common-law-marriage claim. The first letter was from Dr. Rex A. Rawls, who, Jenkins stated, had been Mary’s and Jenkins’s physician. The letter was dated January 4, 2007, and stated that Mary had progressive Alzheimer’s dementia and was “unable to conduct any of her affairs.” The letter further stated that Jenkins, “her husband,” was her caregiver and handled her affairs. The second letter was dated November 1, 2007, and was signed by Jeffery Spiller, who was the pastor at Christ United Methodist Church, where Mary and Jenkins attended services. The letter from Spiller notified Jenkins that a donation had been made by the church in Mary’s name in memory of Jenkins’s “wife,” whose name Spiller listed as “Mary Melton Jenkins.”
Jenkins had the burden of presenting clear and convincing evidence demonstrating that his purported common-law marriage to Mary had gained public recognition. The only evidence indicating that individuals other than Jenkins and Mary considered them to be married was a single letter from Spiller that was sent to Jenkins following Mary’s death and a single letter from Dr. Rawls, which, by its own contents, was written after Mary no longer was mentally capable of conducting her own affairs. Jenkins presented no testimony from members of the community, produced no documentation to support his claim that he and Mary had had a joint bank account, and admitted that he and Mary had owned no property together. There was also no evidence indicating that *110 Jenkins and Mary had ever filed a joint tax return.
Claims of the existence of a common-law marriage are subjected to strict scrutiny and must be supported by clear and convincing evidence. See Baker v. Townsend, 484 So.2d 1097, 1098 (Ala.Civ.App.1986). The meager amount of evidence that Jenkins introduced to prove that he and Mary had gained public recognition of their purported common-law marriage was not sufficient to meet this heavy burden because “[t]he facts adduced by [Jenkins] ... do not meet the required standard of a persuasive pattern of unam-bivalent conduct, but rather are too few and isolated.” Bishop v. Bishop, 57 Ala.App. 619, 622, 330 So.2d 443, 446 (Civ.1976); see also Reese v. Holston, 67 So.3d 109, 113 (Ala.Civ.App.2011)(holding that two isolated documents were insufficient to show a pattern of conduct that the purported common-law marriage had gained public recognition). The lack of jointly owned property and integrated finances also militate against a determination of the existence of a common-law marriage. See Cluxton v. Cluxton, 431 So.2d 1296, 1298 (Ala.Civ.App.1983); Gray, 835 So.2d at 195.
Because we determine that Jenkins did not introduce sufficient evidence to support his claim that he and Mary had entered into a common-law marriage, we reverse the judgment of the probate court and remand the cause for that court to enter a judgment consistent with this opinion.
REVERSED AND REMANDED.
THOMPSON, P.J., and PITTMAN, J., concur.
MOORE, J., dissents, with writing, which BRYAN, J., joins.

. Jenkins stated that they did not have a marriage license.