MOORE, Judge.
Elizabeth McMullins appeals from a judgment of the Shelby Circuit Court (“the trial court”) concluding that she was not married at common law to Larry R. McMullins. We affirm the trial court’s judgment.

Procedural History

On July 5, 2012, Elizabeth filed in the trial court a verified complaint for a divorce, asserting that she and Larry were married at common law and that they had separated and seeking, among other things, a divorce, a division of the parties’ property, and an award of alimony. Larry filed, an answer denying that he and Elizabeth were married at common law and a counterclaim requesting that the trial court “divide the marital property both personal and real if the court deems necessary, on a basis commensurate with the facts of this cause_” Elizabeth filed an answer to Larry’s counterclaim. Larry filed an amendment to his counterclaim, asserting Elizabeth’s adultery as a ground for .a divorce “[i]f the [trial court] establishes a common-law marriage.”
Following a trial, the trial court entered a judgment on December 8, 2014, concluding that Elizabeth had failed to meet her burden of proving the existence of a common-law marriage between the parties. Specifically, the trial court determined that “the evidence is not clear and convincing that the parties’ had a present, mutual agreement to enter into the marriage relationship to the exclusion of all other relationships, nor that there had been public recognition of their relationship as a marriage and public assumption of marital duties.” The trial court, having concluded that no common-law marriage existed, dismissed the case with prejudice, denying all other relief requested and concluding that any pending motions were thereby rendered moot. Elizabeth filed a post-judgment motion on December 15, 2014, which the trial court denied on February *334 19, 2015. Elizabeth timely filed her notice of appeal to this court.

Fads

Elizabeth testified that she and Larry had commenced their relationship as husband and wife on April 13, 1987. She stated that they had never participated in a marriage ceremony but that they had worked together and lived together. According to Elizabeth, she and Larry had separated once in 1987 and another time from December 1998 until October 2001, but, she stated, otherwise they had lived together as husband and wife until July 1, 2012. She stated that they had reconciled in 2001 after her son died and that she and Larry had subsequently been awarded custody of her son’s children. Elizabeth presented as an exhibit Larry’s deposition that was taken on October 24, 2005, in the custody proceedings regarding her son’s children, in which Larry had stated that, although he and Elizabeth had never gone through a marriage ceremony, they considered themselves to be married. She stated that, at the time of the trial in the divorce proceedings, those children were 19 and 14, and .the 19-year-old is married.
Larry testified that he and Elizabeth had had a relationship off and on for many years. He stated that, at one point in late 2004 or 2005, he had felt like he was married to Elizabeth, during the period after her son had died when she was trying to get custody of her grandchildren.

Discussion

Elizabeth argues on appeal that the trial court erred in concluding that the parties were not married at common law. “In Alabama, recognition of a common-law marriage requires proof of the following elements: (1) capacity; (2) present, mutual agreement to permanently enter the marriage relationship to the exclusion of all other relationships; and (3) public recognition of the relationship as a marriage and public assumption of marital duties and cohabitation.” Gray v. Bush, 835 So.2d 192, 194 (Ala.Civ.App.2001). In Stringer v. Stringer, 689 So.2d 194 (Ala.Civ.App.1997), this court stated, in pertinent part:
“‘“Courts of this state closely scrutinize claims of common law marriage and require clear and convincing proof thereof.” Baker v. Townsend, 484 So.2d 1097, 1098 (Ala.Civ.App.1986), citing Walton v. Walton, 409 So.2d 858 (Ala.Civ.App.1982). A trial judge’s findings of facts based on ore tenus evidence are presumed correct, and a judgment based on those findings will not be reversed unless they are found to be plainly and palpably wrong. Copeland v. Richardson, 551 So.2d 353, 354 (Ala.1989). The trial court’s judgment must be viewed in light of all the evidence and all logical inferences therefrom, and it “will be affirmed if, under any reasonable aspect of the testimony, there is credible evidence to support the judgment.” Adams v. Boan, 559 So.2d 1084, 1086 (Ala.1990) (citation omitted).’”
689 So.2d at 197 (quoting Lofton v. Estate of Weaver, 611 So.2d 335, 336 (Ala.1992)).
Assuming, without deciding, that Elizabeth presented clear and convincing evidence of her and Larry’s capacity and their present, mutual agreement to permanently enter into the marriage relationship to the exclusion of all other relationships, she was still required to present clear and convincing evidence regarding the public’s recognition of their relationship as a marriage. Gray, supra.
The evidence presented with regard to the public’s recognition of the parties’ relationship as a marriage is as follows. Debbie Mitchell, who had worked with Larry for several years beginning in 2007 and who had later met Elizabeth, testified that, in her opinion, the parties were married *335 because Larry had stated to . her that, as far as he was concerned, he and Elizabeth were married. She stated that she had told him at that time to “just go get a ring and do it right.” Justin Knighten, who is married to Elizabeth’s granddaughter, who Elizabeth and Larry had received custody of following Elizabeth’s son’s death, testified that it was his understanding that Larry and Elizabeth had never officially married and that they slept in separate bedrooms. He testified that he considers Larry his grandfather-in-law because his wife considers Larry her grandfather. When asked whether his wife considered Larry her grandfather because he was married to her grandmother, he stated that he did not know how his wife “looks at it.” Mitze Matzke, who had worked for Larry’s business, testified that she had never heard Larry and Elizabeth refer to each other as “husband” and “wife.”
Rachel Dunnaway, who is married to Elizabeth’s youngest son, testified that there was no physical relationship between Larry and Elizabeth. She stated also, however, that Larry and Elizabeth had resided together, had vacationed together, and had hosted people .at their house. When asked if she considered Larry and Elizabeth to be married, she stated: “Yes, I guess.” Dunnaway testified further that she did not consider them to be legally married. Garmon Hall, who had known Larry and Elizabeth for 10 years, testified that she had not heard Larry and Elizabeth refer to themselves as being married; she testified further, however, that when they had been trying to get custody of Elizabeth’s grandchildren (hereinafter referred to collectively as “the children”) Larry had asked her to read his and Elizabeth’s depositions to see what she thought. According to Hall, Larry and Elizabeth had referred to themselves in their deposition testimony as being married. Hall also testified that she had gotten “[Larry’s and Elizabeth’s] personal stuff ready for their taxes,” which, she said, they had filed jointly as if they were married. She stated also that Elizabeth, Larry, and the children were “like a family”—they had had holiday dinners like normal families do and Larry and Elizabeth had taken the children to school, had picked the children up from school, and had .met with the children’s teachers together.
Julian Branson, Larry’s neighbor, testified that Elizabeth had asked him in 2011 whether he knew that she and Larry were not married. He stated that, before she had made that statement, he had assumed that they were married.
Larry testified that he had heard Elizabeth refer to him as, her husband after 2005. He testified that they had, been filing joint income-tax returns since 2005 and that they might have opened a joint bank account in 2004. Larry asserted in a motion before the trial court that Elizabeth had “run up many over-draft fees on the parties’ joint account.” Elizabeth testified that she did not think that they had had a joint bank account in 2005.
We conclude that, given the testimony presented, the evidence as to whether the parties had held themselves out to the public as a married couple and, thus, whether there was public recognition of their relationship as a'marriage, is disputed, at best. The trial court could have interpreted Mitchell’s testimony that she had told Larry to “get a ring and 'do it right” to mean that she had thought that the parties were not married. With regard to Hall’s testimony, the trial court could have considered the facts that Hall had merely read the deposition testimony of the parties and had inferred from their testimony that they were married; Hall did not indicate that either party had otherwise presented himself or herself to her *336 as being married. Although Dunnaway testified that she “guessed” she considered the parties to be married, that testimony is not clear and convincing evidence indicating that the parties had held themselves out as a married couple to Dunnaway.
Similarly, Knighten’s testimony indicating that he knew that the parties had never officially married indicates his understanding that the parties were not married at any time. The trial court also could have considered .Knighten’s testimony indicating that his wife considers Larry to be her grandfather to mean only that Larry and Knighten’s wife have a- familial relationship; that testimony does not lead to a conclusion that Knighten’s wife considered Larry to be her grandfather because of his 'relationship with Elizabeth, particularly because that question was asked and Knighten clarified that he was unsure of his wife’s reasoning. Branson testified that Elizabeth had stated specifically that the parties were not married.
In Copeland v. Richardson, 551 So.2d 353 (Ala.1989), our supreme court affirmed a trial court’s finding that the parties' in that case were married at common law despite conflicting evidence; the court stated, in pertinent part: “The ore tenus rule is uniquely applicable to just this type of case. The trial court’s conclusion from the evidence will not be overturned when it is so well supported by the evidence and when the trial court had the added advantage of seeing and hearing the witnesses.” 551 So.2d at 355. Like in Copeland, the evidence was conflicting in the present case. See also Lofton v. Estate of Weaver, 611 So.2d at 336 (affirming finding that there had been no common-law marriage when evidence was disputed and finding was supported by credible evidence). Although Larry testified that the parties “may” have opened a joint bank account together, that evidence, even if proven, would not necessarily require a finding that the parties had held themselves out as a married couple and that there was public recognition of their relationship as a marriage. In Melton v. Jenkins, 92 So.3d 105, 108-10 (Ala.Civ.App.2012), this court determined that, despite testimony indicating that the parties in that' case had had a joint checking account-and a joint savings account, there was not sufficient evidence to support a finding of a common-law marriage.
Because, in the present case, credible evidence supports the trial court’s determination that there had not been a public recognition of the parties’ relationship as a marriage and the public assumption of marital duties, the trial court’s judgment is affirmed.
AFFIRMED.
PITTMAN and DONALDSON, JJ., concur.
THOMPSON, P. J., dissents, without writing.
THOMAS, J., dissents, with writing.