The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
December 13, 2018

**2018COA176**

**No. 17CA1484, *Marriage of Hogsett* — Family Law — Common Law Marriage — Same-Sex Couples**

In this domestic relations appeal, a division of the court of appeals concludes, as a matter of first impression, that the test for determining whether a common law marriage exists, articulated in *People v. Lucero*, 747 P.2d 660 (Colo. 1987), applies to a same-sex relationship, but in a manner consistent with the realities and norms of such relationships. The division further concludes that *Obergefell v. Hodges*, 576 U.S. \_\_\_, 135 S. Ct. 2584 (2015), provides same-sex couples the same right to establish common law marriages that opposite-sex couples enjoy. The division affirms the district court's finding of no common law marriage.

The special concurrence suggests that the General Assembly consider abolishing common law marriage statutorily, consistent with the majority of jurisdictions.

Court of Appeals No. 17CA1484
Arapahoe County District Court No. 16DR30820
Honorable Bonnie McLean, Judge

In re the Marriage of

Edi L. Hogsett,

Appellant,

and

Marcia E. Neale,

Appellee.

JUDGMENT AFFIRMED

Division VI
Opinion by JUDGE FREYRE
Dunn, J., concurs
Furman, J., specially concurs

Announced December 13, 2018

The Radman Law Firm, LLC, Diane R. Radman, Denver, Colorado; Harrington Brewster Clein, P.C., Rachel Catt, Denver, Colorado; Griffiths Law P.C., Ann C. Gushurst, Lone Tree, Colorado, for Appellant

Plog Stein P.C., Stephen J. Plog, W. Curtis Wiberg, Jessica A. Saldin, Greenwood Village, Colorado, for Appellee

¶ 1 Edi L. Hogsett and Marcia E. Neale, a same-sex couple, ended their thirteen-year relationship. Hogsett believed the parties were common law married and petitioned for dissolution. Neale disagreed and moved to dismiss the petition. The district court found that no common law marriage existed and granted Neale's motion to dismiss. Both parties agree that *Obergefell v. Hodges*, 576 U.S. ___, 135 S. Ct. 2584 (2015), which overturned laws banning same-sex marriage, applies retroactively in deciding whether a same-sex common law marriage exists between them.

¶ 2 This appeal raises a novel issue — does the test for determining whether a common law marriage exists, articulated in *People v. Lucero*, 747 P.2d 660 (Colo. 1987), apply to a same-sex relationship? We answer that question "yes" but conclude that the *Lucero* test should be applied consistently with the realities and norms of a same-sex relationship, particularly during the period before same-sex marriages were legally recognized in Colorado. We further conclude that *Obergefell* provides same-sex couples in Colorado with the same right to establish common law marriages that opposite-sex couples enjoy.

¶ 3     Because the district court recognized the limitations of *Lucero* when applied to same-sex relationships, and because competent record evidence supports its finding that a common law marriage did not exist between the parties, we affirm the judgment dismissing the petition. We further reject the other contentions Hogsett raises.

## I.  Background

¶ 4     Hogsett and Neale began dating in 2001 and ultimately entered into a long-term, committed relationship. They exchanged rings in an impromptu ceremony at a bar — neither friends nor family attended this ceremony. They eventually lived together, referred to each other as "[p]artner," maintained joint accounts, initiated joint financial planning, and built a custom home together.

¶ 5     When the relationship ended in 2014, Hogsett and Neale jointly petitioned to dissolve a common law marriage. They executed a separation agreement dividing their property and obligating Neale to pay maintenance to Hogsett. Neale testified that she believed the petition was legally necessary to unravel their finances. Both parties agreed that the marriage date listed in the

petition was "made up" and did not reflect the date of their impromptu ceremony or the date they celebrated as an anniversary.

¶ 6　　At the initial status conference, and after learning that the court would need to first find that a marriage existed before it could dissolve the marriage, both parties agreed to jointly dismiss the petition. Thereafter, Neale stopped paying maintenance to Hogsett.

¶ 7　　Hogsett then moved to reopen the dissolution case, but the court denied her motion. Next, she petitioned to dissolve a civil union between the parties, but ultimately withdrew that petition. Hogsett then filed a second petition to dissolve a common law marriage between her and Neale. Neale moved to dismiss the petition, arguing that the *Lucero* test was not met. She further argued that because the parties could not legally marry during their relationship, they could not have agreed — as *Lucero* requires — that they were married. Thus, the court could not retroactively find a common law marriage between them.

¶ 8　　After an evidentiary hearing, the district court applied the *Lucero* test and found, by a preponderance of the evidence, that the parties were not common law married. The court said, "I do believe that the Court can find same-sex common law marriage existed,"

3

based on pre-*Obergefell* conduct, but it ultimately concluded that the parties' conduct did not evidence a common law marriage.

¶ 9 Hogsett moved for relief from the court's judgment under C.R.C.P. 59. Her motion was deemed denied under C.R.C.P. 59(j), and this appeal followed.

## II. Hogsett's Contentions

¶ 10 Hogsett raises four contentions on appeal: (1) the district court erred in applying the *Lucero* test and finding no common law marriage existed; (2) the court erroneously relied on parol evidence, rather than the language of the separation agreement, in determining whether the parties had mutually agreed to marriage; (3) the court committed evidentiary error by considering both information from the parties' mediation and the parties' statement to the court facilitator that they were not married — a fact not in evidence; and (4) the court should have enforced the parties' separation agreement.

¶ 11 We begin with the *Lucero* test for establishing a common law marriage as applied to a same-sex relationship. Whether that test applies to a same-sex relationship is a question of law that we review de novo. *In re Marriage of Vittetoe*, 2016 COA 71, ¶ 17. We

4

next determine whether the district court properly applied the *Lucero* factors to the same-sex relationship here — a question we review for an abuse of discretion. 747 P.2d at 665. We conclude that the district court did not err in applying *Lucero* to find that no common law marriage existed between Hogsett and Neale. Inherent in this conclusion is that a court may find a same-sex common law marriage existed under *Lucero* based on the parties' pre-*Obergefell* conduct. We then address and reject Hogsett's remaining contentions of error.

### III. The District Court Properly Applied the *Lucero* Test

### A. Legal Standards

¶ 12    Colorado recognizes common law marriage. *In re Marriage of Cargill*, 843 P.2d 1335, 1339 (Colo. 1993). A common law marriage is established by (1) the parties' mutual consent or agreement to be husband and wife, followed by (2) their mutual and open assumption of a marital relationship. *Lucero*, 747 P.2d at 663; *People v. Perez-Rodriguez*, 2017 COA 77, ¶ 14; *see also In re Marriage of J.M.H.*, 143 P.3d 1116, 1118 (Colo. App. 2006) ("[I]n a common law marriage, two persons create a valid marital relationship without the benefit of a legal marriage ceremony

performed according to statutory requirements."). Both elements must be established for a common law marriage to exist. *Lucero*, 747 P.2d at 663-64.

¶ 13   The party alleging that a common law marriage exists has the burden to prove the required elements by a preponderance of the evidence. *See id.* at 664 n.6 (noting that a higher burden of proof is not required, but "more than vague claims unsupported by competent evidence" must be presented); *see also* § 13-25-127(1), C.R.S. 2018 (the burden of proof in any civil action shall be by a preponderance of the evidence). Thus, we reject Neale's argument that a clear and convincing evidence standard applies.

¶ 14   The Colorado Supreme Court recognizes that the very nature of common law marriage makes it unlikely that an express agreement to be married will exist. Instead, the parties' understanding that they are married may be inferred from their conduct, including cohabitation and a general reputation in the community that they hold themselves out as husband and wife. *Lucero*, 747 P.2d at 664-65; *see also Perez-Rodriguez,* ¶¶ 14, 17. The court has identified certain specific conduct that may suggest an intent to be married, including (1) cohabitation; (2) maintaining

6

joint banking and credit accounts; (3) creating joint property ownership; (4) the parties' use of one surname; and (5) the filing of joint income tax returns. *Lucero*, 747 P.2d at 665. However, this list is not exhaustive, and any form of evidence that openly manifests the parties' intent to be married may provide the requisite proof from which a mutual understanding can be inferred. *Id.*

¶ 15 "A determination of whether a common law marriage exists turns on issues of fact and credibility, which are properly within the trial court's discretion." *Id.*; *see In re Custody of Nugent*, 955 P.2d 584, 588 (Colo. App. 1997). Accordingly, we review the district court's factual findings for clear error and its common law marriage determination based on those findings for an abuse of discretion. *See In re Estate of Wires*, 765 P.2d 618, 618-19 (Colo. App. 1988) (upholding conclusion that no common law marriage existed based on sufficiency of factual findings); *People v. Maes*, 43 Colo. App. 365, 368, 609 P.2d 1105, 1108 (1979) (finding of no common law marriage was supported by competent evidence in the record and was therefore binding on appellate court). We must uphold a district court's factual findings unless no evidence exists to support them. *People in Interest of A.J.L.*, 243 P.3d 244, 252 (Colo. 2010).

## B. Analysis

¶ 16    In applying *Lucero,* the district court found that cohabitation alone was not enough to establish a common law marriage, but rather noted that "[m]arriage is a distinctly different relationship." It also noted that certain of the *Lucero* common law marriage elements, "in many ways, do not reflect the reality of the situation for same-sex couples." In particular, during the period of the parties' relationship, people in same-sex relationships were not allowed to list each other as "spouses" on financial or medical documents, nor were they permitted to file tax returns as a married couple. Furthermore, they often called each other "partners" rather than "spouses" or "husband" and "wife," and often did not share surnames.

¶ 17    The court noted the parties' conflicting views regarding the purpose of the impromptu ceremony and the ring exchange, which it found took place at a bar without family or friends present. It further found that the parties did not celebrate anniversaries based on this ceremony date.

¶ 18    When considering these factors, the court noted that some of them were "not helpful" in the context of a same-sex relationship.

Instead, what it found "very important" was evidence from the parties' initial status conference on their joint dissolution petition, including the family court facilitator's minute order stating that when the facilitator told the parties the court would have to make a status of marriage finding in their case, both parties desired to immediately dismiss the petition. The court found this to be more persuasive evidence of the parties' intent than the parties' initial decision to file the petition and enter into a separation agreement. As well, the court found Neale's testimony credible that she did not believe the parties were married and that she had only signed the petition and separation agreement because she believed she had to sign them to legally divide their finances.

¶ 19 The parties' testimony revealed further evidence of their intent. Neale testified that she did not believe in marriage and that she had expressed this belief to Hogsett numerous times during their relationship. Hogsett corroborated Neale's testimony when she acknowledged that Neale had said she did not believe in marriage, but instead believed in "a higher power" than marriage. And several

witnesses testified that Neale did not believe in the institution of marriage.[1]

¶ 20    The court correctly said that under *Lucero,* if one party to a purported common law marriage believes she is married, but the other party does not, a marriage cannot be established.  *See* 747 P.2d at 663 (requiring "mutual consent or agreement" to be married).  And although the court found credible Hogsett's belief that she was married to Neale, it also found credible Neale's belief that she was never married to Hogsett.  This finding is supported by the record.  Therefore, we conclude that the court correctly applied the standard from *Lucero* to the parties' same-sex relationship, and in doing so, appropriately recognized and accorded less weight to those factors that were less relevant in that context.

¶ 21    We acknowledge Hogsett's argument that many indicia of a marriage were present, including the parties' intertwined finances, the existence of joint accounts, and their joint ownership of a home. Nevertheless, many factors show there was no common law marriage, including the parties' joint dismissal of the dissolution

---

[1] One witness testified that she believed the parties were married. This witness also said Hogsett was previously married, a position Hogsett disputed.

10

petition, Neale's professed beliefs concerning marriage, the absence of references to marriage in the parties' private correspondence with each other, and the absence of conduct showing an attempt to be married in a state where same-sex marriage was legal, which the court chose to weigh more heavily, and which are supported by the record. Accordingly, we do not disturb the judgment. *See Wires,* 765 P.2d at 618-19; *Maes,* 43 Colo. App. at 368, 609 P.2d at 1108.

## C. Retroactive Application of *Obergefell*

¶ 22 Inherent in our conclusion is the recognition that *Obergefell* applies retroactively in determining the existence of a common law marriage. As Hogsett notes, the only reason that many of *Lucero*'s indicia of marriage were unavailable to the parties is because of unconstitutional laws forbidding same-sex marriage. Thus, the court properly gave less weight to such indicia during the parties' pre-*Obergefell* relationship.

¶ 23 The provisions of Colorado law limiting valid marriages to those between a man and a woman, *see* Colo. Const. art. II, § 31; § 14-2-104(1)(b), C.R.S. 2018, have been ruled unconstitutional. *See Obergefell,* 576 U.S. at ___, 135 S. Ct. at 2604-05; *see also Kitchen v. Herbert,* 755 F.3d 1193, 1198-99 (10th Cir. 2014)

11

(striking down Utah's law banning same-sex marriage under the Fourteenth Amendment of the United States Constitution). The *Obergefell* Court concluded that "the right to marry is a fundamental right inherent in the liberty of the person, and under the Due Process and Equal Protection Clauses of the Fourteenth Amendment[,] couples of the same sex may not be deprived of that right and that liberty." 576 U.S. at ___, 135 S. Ct. at 2604; *see also Pavan v. Smith*, 582 U.S. ___, ___, 137 S. Ct. 2075, 2076-78 (2017) (per curiam).

¶ 24 In states like Colorado that recognize common law marriage, retroactive application of *Obergefell* means that same-sex couples must be accorded the same right as opposite-sex couples to prove a common law marriage even when the alleged conduct establishing the marriage pre-dates *Obergefell*. *See* 576 U.S. at ___, 135 S. Ct. at 2605 ("The dynamic of our constitutional system is that individuals need not await legislative action before asserting a fundamental right."); *see also Ranolls v. Dewling*, 223 F. Supp. 3d 613, 619-22 (E.D. Tex. 2016); *In re Estate of Carter*, 159 A.3d 970, 977-78 (Pa. Super. Ct. 2017); Lee-ford Tritt, *Moving Forward by Looking Back: The Retroactive Application of* Obergefell, 2016 Wis. L.

12

Rev. 873, 921 (2016) (arguing that *Obergefell* should be applied retroactively to conduct occurring prior to the date of the decision because "substantive law should not shift according to claims of reliance on an old rule that deprived people of a fundamental right"); Steven A. Young, Note, *Retroactive Recognition of Same-Sex Marriage for the Purposes of the Confidential Marital Communications Privilege,* 58 Wm. & Mary L. Rev. 319, 337 (2016) ("There is one area of marriage law that has . . . embraced the retroactivity of *Obergefell* without hesitation: common law marriage.").[2]

¶ 25    We agree with these authorities and the parties that *Obergefell* applies retroactively to a Colorado same-sex relationship and, thus, that a party like Hogsett may allege that a common law marriage existed pre-*Obergefell.* We conclude that because there was competent evidence that Neale did not consent to a marriage and that the ceremony was merely an impromptu commitment ceremony, the record as a whole supports the court's finding that no common law marriage existed. *Cf. In re Estate of Leyton,* 22

---

[2] The retroactivity of *Obergefell v. Hodges,* 576 U.S. ___, 135 S. Ct. 2584 (2015), to same-sex common law marriage in Colorado was recently discussed in Lisa M. Dailey & Joel M. Pratt, *Pre-2014 Same-Sex Common-Law Marriages,* 47 Colo. Law. 42 (Dec. 2018).

N.Y.S.3d 422, 423 (N.Y. App. Div. 2016) (holding, in non-common law marriage state, that *Obergefell* did not require retroactively treating commitment ceremony as a valid marriage ceremony, which would have been inconsistent with the parties' mutual understanding that they were not legally married).

### IV. Remaining Contentions

### A. Parol Evidence Rule

¶ 26 Although Hogsett argued in the district court that Neale's signatures on the joint petition and separation agreement evidenced her acknowledgment that a marriage existed, Hogsett did not argue that this evidence was legally dispositive of *Lucero*'s mutual agreement element, or that no other evidence could be considered under the parol evidence rule. Nor did Hogsett object when Neale presented evidence contrary to the separation agreement statement that the parties were married. Instead, she submitted her own extrinsic evidence to support the statement.

¶ 27 Accordingly, we may not address Hogsett's parol evidence argument because she raises it for the first time on appeal. *See In re Marriage of Ensminger*, 209 P.3d 1163, 1167 (Colo. App. 2008); *see also Valentine v. Mountain States Mut. Cas. Co.*, 252 P.3d 1182,

14

1188 n.4 (Colo. App. 2011) ("We review only the specific arguments a party pursued before the district court."). Nor, for the same reason, may we address her related "estoppel by contract" argument.

## B. Evidentiary Issues

¶ 28 We next consider and reject Hogsett's evidentiary contentions. She first argues that the court erroneously considered information from the parties' mediation session in violation of section 13-22-307(2), (3), C.R.S. 2018. However, the record shows that the court ultimately rejected the proffered exhibit of email messages between the parties and the mediator. Indeed, the court confirmed that it had not taken the exhibit into account in making its decision. Hogsett's argument that "the damage was done" is unpersuasive in the context of a trial to the court. *See People in Interest of M.M.*, 215 P.3d 1237, 1249 (Colo. App. 2009) ("In the context of a bench trial, the prejudicial effect of improperly admitted evidence is generally presumed to be innocuous" because such evidence was disregarded by the court in reaching its conclusions.).

¶ 29 Additionally, the court's finding that the December 1, 2002, marriage date reflected in the petition was "made up" was based on

the parties' testimony that they celebrated anniversaries on November 8 — not on the mediation information. Neale testified that the parties celebrated anniversaries on November 8 because that was the date they became intimate and that nothing had occurred on December 1, 2002. Hogsett agreed that she and Neale celebrated anniversaries on November 8, and she could not recall whether December 1, 2002, was the actual date of their ceremony. And Hogsett said she had used a different date — July 24, 2003 — as the beginning of the relationship in her petition to dissolve a civil union. Accordingly, we will not disturb the district court's judgment on this basis. *See id.* at 1249-50 (noting that a judgment after a bench trial "will not be disturbed unless it is clear that the court could not have reached the result but for the incompetent evidence").

¶ 30 Hogsett next argues that the court erroneously relied on a fact not in evidence — statements made to the family court facilitator — in finding that there was no marriage. We are not persuaded. Rather, as the court noted, the parties' testimony conflicted on their reasons for dismissing the joint dissolution petition. And the court could reasonably infer from the record — specifically, the

16

facilitator's minute order showing both parties' desire to dismiss the petition without consulting counsel as the facilitator had recommended — that they both believed no marriage existed. *See In re Marriage of Lewis*, 66 P.3d 204, 207 (Colo. App. 2003) (explaining that inferences and conclusions to be drawn from the evidence are matters within the district court's sole discretion).

### C. Enforcement of the Separation Agreement

¶ 31    Finally, because Hogsett abandoned her request that the district court enforce the parties' separation agreement, independent of its common law marriage determination, we do not address that issue. *See JW Constr. Co. v. Elliott*, 253 P.3d 1265, 1271 (Colo. App. 2011) (identification of issue in answer and trial management order, without more, fails to preserve it for appellate review); *Brody v. Hellman*, 167 P.3d 192, 199 (Colo. App. 2007) (issue not pursued through disposition in the district court is abandoned for the purposes of appeal).

¶ 32    Although Hogsett argued, in her response to Neale's motion to dismiss the dissolution petition, that the court must enforce the parties' separation agreement, she did not then pursue that argument through to disposition at the hearing in either her written

17

closing argument or her postjudgment motion. Instead, at the end of the court's oral ruling, Hogsett's attorney stated that she believed the ruling "puts us back into civil court having to enforce the . . . agreement." Notably, she did not ask the court to enforce the separation agreement, despite the court's finding of no common law marriage.[3] Accordingly, we do not address this issue. *See JW Constr. Co.*, 253 P.3d at 1271-72; *Brody*, 167 P.3d at 199; *see also Berra v. Springer & Steinberg, P.C.*, 251 P.3d 567, 570 (Colo. App. 2010) (to preserve an issue for appeal, it must be brought to the district court's attention so that the court has an opportunity to rule on it).

## V. Conclusion

¶ 33 The judgment is affirmed.

JUDGE DUNN concurs.

JUDGE FURMAN specially concurs.

---

[3] Both parties concede preservation. However, we are not bound by the parties' concessions, and we may rely on our own legal interpretations, even if they are inconsistent with counsel's representations and arguments. *See People v. Zubiate*, 2013 COA 69, ¶ 22, *aff'd*, 2017 CO 17, ¶ 22.

JUDGE FURMAN, specially concurring.

¶ 34 I agree with the majority that the record supports the trial court's finding that Neale did not believe that she was married to Hogsett. Because "mutual consent or agreement" is necessary for a common law marriage, *People v. Lucero*, 747 P.2d 660, 663 (Colo. 1987), I also agree that the record supports the trial court's ultimate finding that a common law marriage did not exist between Hogsett and Neale.

¶ 35 But, I write separately to encourage our legislature to abolish common law marriage, in conformity with the majority of jurisdictions. As this case illustrates, common law marriage places a significant and unnecessary burden on the parties and our courts to untangle relationships to determine property (or probate) matters. I believe this is needlessly expensive and unfair to the parties. For all intents and purposes, Hogsett believed she and Neale were married, but Neale believed otherwise. And the two had to endure a lengthy hearing and appeal to determine they were not.

¶ 36 Because Colorado's citizens have physical and legal access to ceremonial marriage, and children born to unmarried parents are afforded the same rights and privileges as those born to married

parents, common law marriage is no longer practically or legally necessary. *See McMullins v. McMullins*, 202 So. 3d 332, 337-38 (Ala. Civ. App. 2016) (Thomas, J., dissenting).