The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader.  The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
January 25, 2018

## 2018COA11

**No. 17CA0339, *People In the Interest of J.L.* – Juvenile Court —
Dependency and Neglect — American Indian Law — ICWA —
Notice**

In this dependency and neglect case, a division of the court of
appeals concludes that a written advisement form directing parents
to inform the court whether a child is an Indian child does not meet
the inquiry requirements of the Indian Child Welfare Act of 1978
(ICWA).  The division also concludes that the trial court did not
comply with ICWA's notice requirements with regard to three
potentially concerned tribes.  For these reasons, the division
remands the case to the trial court for the limited purpose of
complying with ICWA and, upon doing so, to make further findings
regarding the applicability of ICWA.

COLORADO COURT OF APPEALS                                    **2018COA11**

Court of Appeals No. 17CA0339
Alamosa County District Court No. 15JV114
Honorable Martin A. Gonzalez, Judge

The People of the State of Colorado,

Petitioner-Appellee,

In the Interest of J.L. and S.M., Children,

and Concerning J.C.,

Respondent-Appellant.

ORDER OF LIMITED REMAND

Division A
Furman, Ashby, and Welling, JJ.
PER CURIAM

Announced January 25, 2018

Jason T. Kelly, County Attorney, Alamosa, Colorado, for Petitioner-Appellee

Mérida I. Zerbi, Guardian Ad Litem

Catherine A. Madsen, P.C., Catherine A. Madsen, Westminster, Colorado, for Respondent-Appellant

¶ 1    In this dependency and neglect proceeding, J.C. (mother) appeals the judgment terminating the parent-child legal relationship with her children, S.M. and J.L.  Mother's third child, J.A., was named in the original proceeding but is not a subject of this appeal.

¶ 2    The record indicates that the trial court and the Alamosa County Department of Human Services (Department) did not comply with the inquiry requirements of the Indian Child Welfare Act of 1978 (ICWA), 25 U.S.C. §§ 1901-1963 (2012), and section 19-1-126, C.R.S. 2017.  And, although the court's belated inquiry revealed sufficient information to trigger ICWA's notice requirements, the Department did not fulfill its duty in this regard. Therefore, we remand the case to the trial court for the limited purpose of ensuring that the Department provides notice in accordance with ICWA.

## I.    ICWA's Inquiry and Notice Requirements

¶ 3    ICWA's provisions protect and preserve Indian tribes and their resources and protect Indian children who are members of or are eligible for membership in an Indian tribe.  25 U.S.C. § 1901(2), (3) (2012).  ICWA recognizes that Indian tribes have a separate interest

1

in Indian children that is equivalent to, but distinct from, parental interests. *B.H. v. People in Interest of X.H.*, 138 P.3d 299, 303 (Colo. 2006); *see also Mississippi Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 52 (1989). Accordingly, in a proceeding in which ICWA may apply, tribes must have a meaningful opportunity to participate in determining whether a child is an Indian child and to be heard on the issue of ICWA's applicability. *B.H.*, 138 P.3d at 303.

¶ 4    To ensure that tribes have an opportunity to be heard, Colorado's ICWA implementing legislation provides that in dependency and neglect proceedings, the petitioning party must "[m]ake continuing inquiries to determine whether the child who is the subject of the proceeding is an Indian child." § 19-1-126(1)(a). The petitioning party must make one of two disclosures in the petition or other commencing pleading: (1) "that the child who is the subject of the proceeding is an Indian child and the identity of the Indian child's tribe" or (2) "what efforts the petitioning or filing party has made in determining whether the child is an Indian child." § 19-1-126(1)(c).

¶ 5    Thus, to fulfill its duties under ICWA, the Department must investigate the child's status early in the case. *People in Interest of L.L.*, 2017 COA 38, ¶ 30. And, because only the tribe itself may determine its membership, *id.* at ¶ 20, the Department must promptly notify each tribe in which the child may be a member or eligible for membership, *id.* at ¶ 34; *see also B.H.*, 138 P.3d at 302.

¶ 6    The Bureau of Indian Affairs (BIA) regulations and guidelines implementing ICWA contain similar inquiry and notice provisions for trial courts. For example, the guidelines issued in 2015 — in effect during the initial proceedings in this case — directed agencies and courts, in every child-custody proceeding, to ask whether the child is or could be an Indian child and to conduct an investigation into whether the child is an Indian child. Guidelines for State Courts and Agencies in Indian Child Custody Proceedings, 80 Fed. Reg. 10,146, 10,152 (Feb. 25, 2015) (2015 Guidelines).

¶ 7    In 2016, the BIA repealed the 2015 Guidelines and replaced them with regulations and guidelines that impose similar duties of inquiry and notice on trial courts. *L.L.*, ¶ 15; Indian Child Welfare Act Proceedings, 81 Fed. Reg. 38,778 (June 14, 2016); Bureau of Indian Affairs, Guidelines for Implementing the Indian Child

Welfare Act (Dec. 2016), https://perma.cc/3TCH-8HQM (2016 Guidelines); *see also* 25 C.F.R. § 23.107-.109, .111 (2017). These regulations and guidelines were in effect during the termination hearing in this case.

¶ 8      25 C.F.R. § 23.107(a) requires trial courts to "ask each participant in an emergency or voluntary or involuntary child-custody proceeding whether the participant knows or has reason to know that the child is an Indian child. The inquiry is made at the commencement of the proceeding and all responses should be on the record." Likewise, the 2016 Guidelines, which were adopted as examples of best practices for the implementation of ICWA, *see L.L.*, ¶¶ 15-16, reiterate that inquiry is required at each new child-custody proceeding. They explain this inquiry duty as follows:

> The rule does not require an inquiry at each hearing within a proceeding; but, if a new child-custody proceeding (such as a proceeding to terminate parental rights or for adoption) is initiated for the same child, the court must make a finding as to whether there is "reason to know" that the child is an Indian child. In situations in which the child was not identified as an Indian child in the prior proceeding, the court has a continuing duty to inquire whether the child is an Indian child.

2016 Guidelines at 11.

¶ 9 If, upon conducting the required inquiry, the petitioning party knows or has reason to believe that an Indian child is involved in a termination proceeding, the party must provide notice of the proceeding to the potentially concerned tribe or tribes. § 19-1-126(1)(b); *B.H.*, 138 P.3d at 302; *see also* 25 U.S.C. § 1912(a) (2012).

¶ 10 What constitutes "reason to believe" in any particular set of circumstances is not precisely defined. *See B.H.*, 138 P.3d at 303. But the threshold for notice was not intended to be high. *Id.* Because ICWA intends for tribes themselves to decide whether children are tribal members, sufficiently reliable information of virtually any criteria is sufficient to trigger ICWA's notice requirements. *Id.* at 304. "When in doubt, it is better to conduct further investigation into a child's status early in the case; this establishes which laws will apply to the case and minimizes the potential for delays or disrupted placements in the future." 2016 Guidelines at 11.

¶ 11 Departments must directly notify each concerned tribe by registered mail with return receipt requested of the pending

child-custody proceedings and its right to intervene. *L.L.*, ¶¶ 34-35.

The notice must include:

> (1) The child's name, birthdate, and birthplace;
>
> (2) All names known (including maiden, married, and former names or aliases) of the parents, the parents' birthdates and birthplaces, and Tribal enrollment numbers if known;
>
> (3) If known, the names, birthdates, birthplaces, and Tribal enrollment information of other direct lineal ancestors of the child . . .; [and]
>
> (4) The name of each Indian Tribe in which the child is a member (or may be eligible for membership if a biological parent is a member).

25 C.F.R. § 23.111(d)(1)-(4).

¶ 12 The notice must also include a copy of the petition, complaint, or other document by which the child-custody proceeding was initiated and, if a hearing has been scheduled, information on the date, time, and location of the hearing, and various statements related to the tribe's right to intervene and petition for a transfer. 25 C.F.R. § 23.111(d)(5)-(6).

6

## II. The Trial Court and the Department Did Not Comply with ICWA

¶ 13    In this case, the trial court first inquired about the applicability of ICWA at a termination hearing regarding J.A. *after* orally ordering termination of parental rights.  For purposes of ICWA, this was the second child-custody proceeding involving J.A.  Under 25 C.F.R. § 23.107(a), the trial court should have made that inquiry at the first hearing after the petition in dependency and neglect was filed and again at the start of the termination proceeding.

¶ 14    Mother responded that (1) both she and the father of J.A. and J.L. had Native American blood and (2) she and her family had been "kicked off the tribe."  The trial court ordered her to file a relative affidavit identifying her tribal connections.  The court did not ask her about J.A. and J.L.'s father's Indian heritage.  And, although the court asked the boys' father about his heritage at the termination hearing involving J.L. and S.M., it never inquired whether any participant knew or had reason to know S.M. was an Indian child.  (S.M. has a different father than her brothers; S.M.'s

father was not identified, and his parental rights were terminated after service by publication.)

¶ 15    At a subsequent hearing, mother indicated that she had Indian heritage through her biological family.  She indicated her tribe was either "Sangre de Cristo de Pueblo in Taos," Aztec, or Kiowa.  Mother, an adoptee, did not know about registered tribal affiliation, but she asserted that her biological mother would have that information.  Mother's counsel indicated that he would provide information on mother's biological parents to the Department as soon as he received it from mother.  The Department stated that it believed ICWA did not apply, but did not describe what efforts it had made to determine whether any of the children was an Indian child.

¶ 16    The federally recognized tribes include the Kiowa Indian Tribe of Oklahoma and the Pueblo of Taos, New Mexico, which is located in the Sangre de Cristo mountains.  *See* Indian Entities Recognized and Eligible to Receive Services From the United States Bureau of Indian Affairs, 82 Fed. Reg. 4915 (Jan. 17, 2017).  So mother's disclosures gave the court reason to believe the children were

Indian children. But the record contains no evidence that the Department sent notice to either of these tribes.

¶ 17 The Department asserts that mother did not provide a relative affidavit identifying her biological parents. It is true that the Department should try to provide sufficient information for the tribe to make the determination as to whether the child is a member or eligible for membership. *L.L.*, ¶ 37. But the lack of complete information does not relieve the Department of its duty to send notice with the information it has. *Accord* 25 C.F.R. § 23.111(d)(3) (notice shall include direct lineal ancestors *if known*). Thus, we must remand the case to the trial court so the Department may comply with the notice requirements of ICWA.

¶ 18 At the termination hearing, mother's counsel stated that he had spoken with mother's adoptive family and determined that "the ICWA relationship that [mother] had brought to the [c]ourt's attention was not viable." But he did not elaborate, so we don't know the basis for his representation. Moreover, it was for the Kiowa and Pueblo of Taos tribes, not mother's adoptive family, to determine whether the children were members or eligible for membership. *See L.L.*, ¶ 20; *accord B.H.*, 138 P.3d at 304

(statements, actions, or waiver of a parent cannot overcome otherwise sufficiently reliable information). So counsel's statement did not relieve the Department of its duty to notify the tribes of the child-custody proceeding, and, absent further information from the tribes, did not support a finding by the trial court that the children were not Indian children.

¶ 19 The Department contends that the written advisement of rights mother signed shortly after the shelter hearing served as the court's initial inquiry. The advisement form stated the following:

> If you, your child or children are a registered member [sic] of a [N]ative American Indian tribe or are eligible to become a member of a [N]ative American Indian tribe, you may be entitled to additional rights and protections under the Indian Child Welfare Act. You must advise the court of this in order to receive these additional rights and protections.

¶ 20 But the 2015 Guidelines directed courts to "ask[] each party to the case, including the guardian ad litem and the agency representative, to certify on the record whether they have discovered or know of any information that suggests or indicates the child is an Indian child." 80 Fed. Reg. at 10,152. A written advisement form provided to one participant falls far short of

meeting this requirement. *See also* 25 C.F.R. § 23.107(a) (codifying the duty of inquiry). So we reject the Department's contention.

¶ 21    We recognize that the 2015 Guidelines, unlike the regulations promulgated in 2016, were not binding on the trial court. But, as recognized by both the 2015 Guidelines and the 2016 Guidelines, early identification of ICWA applicability promotes proper implementation of ICWA at an early stage, protects the rights of Indian children and their families, prevents delays, and avoids sometimes tragic consequences. *See* 2016 Guidelines at 11; 80 Fed. Reg. at 10,148.

¶ 22    Regardless, as discussed above, the termination proceeding was subject to the 2016 Guidelines and regulations. And, more importantly, the Department failed to send notice to the appropriate tribes when mother identified a reason to believe the children were Indian children. Under these circumstances, the record does not support the trial court's finding that ICWA does not apply.

### III.    Instructions on Remand

¶ 23    We remand the case to the trial court for the limited purpose of directing the Department to send appropriate notice to the Kiowa Indian Tribe of Oklahoma and the Pueblo of Taos.

¶ 24 The trial court must afford the tribes a reasonable amount of time to respond to notices sent and must proceed in accordance with 25 U.S.C. § 1912(a). Section 1912(a) provides that no foster care placement hearing or termination of parental rights proceeding shall be held until at least ten days after receipt of notice by the tribe. This section further provides that a tribe shall be granted twenty additional days to prepare for such proceeding if the tribe so requests.

¶ 25 After receiving responses from the tribes or, if no response is received from one or more of the noticed tribes, after the expiration of the time frame under section 1912(a) or a reasonable additional time deemed appropriate by the trial court, the court shall enter factual findings and legal conclusions regarding the application of ICWA.

¶ 26 If the trial court determines that either of the children is an Indian child, within seven days of the issuance of the trial court's order making such determination, the Department must file notice with this court along with a copy of the trial court's order, and the appeal shall be recertified to permit a division of this court to issue an opinion vacating the termination judgment and remanding the

case to the trial court with directions to proceed in accordance with ICWA.

¶ 27     If the trial court determines that the children are not Indian children, within seven days of issuance of the trial court's order making such determination, the Department must file notice with this court along with a copy of the trial court's order, and the appeal shall be recertified.  Within seven days of recertification, the Department must file either (1) a supplemental record consisting of the trial court's order on remand, a transcript of the proceedings on remand, and any notices sent and responses received; or (2) a supplemental designation of record of the same.

¶ 28     Additionally, within fourteen days of recertification, mother may file a supplemental brief, not to exceed ten pages or 3500 words, limited to addressing the trial court's ICWA determination. If mother files a supplemental brief, the other parties may file, within fourteen days of the filing of mother's brief, supplemental briefs in response, not to exceed ten pages or 3500 words.

¶ 29     This court further orders that the Department notify this court in writing of the status of the trial court proceedings in the event that this matter is not concluded within twenty-eight days from the

13

date of this order, and that the Department shall do so every twenty-eight days thereafter until the trial court issues its order on remand.

BY THE COURT:

Furman, J.
Ashby, J.
Welling, J.