25CA1805 Peo in Interest of JLB 02-05-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA1805
City and County of Denver Juvenile Court No. 24JV30211
Honorable Laurie A. Clark, Judge

---

The People of the State of Colorado,

Appellee,

In the Interest of J.L.B., a Child,

and Concerning J.M.B.,

Appellant.

---

JUDGMENT AFFIRMED

Division II
Opinion by JUDGE SULLIVAN
Fox and Kuhn, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced February 5, 2026

---

Miko Brown, City Attorney, Amy J. Packer, Assistant City Attorney, Denver, Colorado, for Appellee

Josi McCauley, Guardian Ad Litem

Beth Padilla, Office of Respondent Parents' Counsel, Durango, Colorado, for Appellant

¶ 1     J.M.B. (father) appeals the judgment terminating his parent-child legal relationship with J.L.B. (the child).  We affirm.

## I.     Background

¶ 2     In March 2024, Denver Human Services (the Department) filed a petition in dependency or neglect, alleging that mother had given birth to a substance-exposed child.  At that time, father was incarcerated in the county jail awaiting extradition to Mississippi.  The Department assumed temporary custody of the child and placed her in foster care.

¶ 3     Father appeared for the first time by phone from Mississippi at a June 2024, hearing, and he requested genetic testing to establish parentage.  After his release from custody in July 2024, father returned to Colorado but didn't complete genetic testing, so his mother eventually submitted a genetic sample instead.  In February 2025, the juvenile court declared father the child's legal parent.

¶ 4     About a month later, father appeared in court for only the second time and admitted to the allegations in the petition.  The juvenile court adjudicated the child dependent or neglected, and it adopted a treatment plan for father that required him to (1) comply

with and resolve his criminal cases and (2) develop a relationship with the child.

¶ 5    In July 2025, the Department moved to terminate father's parental rights, and the juvenile court later held an evidentiary hearing.  At the hearing, the Department presented evidence that father hadn't visited the child since September 2024, hadn't had contact with the Department since April 2025, and had active warrants in Colorado and Mississippi.  After hearing the evidence, the court terminated the parent-child legal relationship between father and the child in a detailed written order.

## II.    Colorado's Indian Child Welfare Act

¶ 6    Father asserts that the juvenile court erred when it didn't order the Department to investigate information that the child had "Indian heritage," as required by Colorado's Indian Child Welfare

Act (ICWA), section 19-1-126(3), C.R.S. 2024.[1]  We discern no reversible error.

¶ 7     In a dependency or neglect proceeding in Colorado, a juvenile court must inquire of the parties whether they know or have reason to know that a child is an "Indian child."  § 19-1-126(1)(a)(I)(A). "[M]ere assertions of a child's Indian heritage . . . , without more, are not enough to give a juvenile court 'reason to know' that the child is an Indian child."  *People in Interest of E.A.M. v. D.R.M.*, 2022 CO 42, ¶ 66.  But a general assertion of Indian heritage triggers the due diligence requirements in section 19-1-126(3).  *H.J.B. v. People in Interest of A-J.A.B.*, 2023 CO 48, ¶ 5.  Section 19-1-126(3) requires the court to direct a department to "exercise due diligence in gathering additional information that would assist the court in

---

[1] The General Assembly repealed section 19-1-126 in 2025, *see* Ch. 338, sec. 1, § 19-1-126, 2025 Colo. Sess. Laws 1779-81, and then replaced it with a more detailed statute, *see id.* at sec. 2, §§ 19-1.2-101 to -132, 2025 Colo. Sess. Laws at 1781-1815.  The relevant language in former section 19-1-126(3) now appears in section 19-1.2-107(4)(a), C.R.S. 2025.  We cite the 2024 statute because that was the version in effect when father's attorney first reported Indian heritage, although we would reach the same conclusion under the 2025 statute.

determining whether there is reason to know that the child is an Indian child."

¶ 8    At father's first appearance in June 2024, the juvenile court didn't directly ask him whether he knew or had reason to know that the child was an Indian child.  Instead, the court inquired of father's attorney, who told the court that he thought father had "possible Native American heritage on his paternal side."  The attorney said that he would "get what information" he could and provide it to the Department and the court.  The court didn't order the Department to exercise due diligence under section 19-1-126(3).

¶ 9    Nothing in the record indicates that father's counsel provided any additional information, and father didn't appear in court again until the adjudicatory hearing in March 2025.  At that hearing, the juvenile court asked father directly whether he had any Indian heritage.  Father responded, "No."  After the dispositional hearing a month later, the court found that father had no Indian heritage and that ICWA didn't apply.  The court made the same findings when it terminated father's parental rights.

¶ 10    On appeal, father contends that the juvenile court should have directed the Department to investigate his attorney's claim that he

had Indian heritage. True, section 19-1-126(3) requires the court to direct the Department to exercise due diligence when it "receives information that the child may have Indian heritage." But because father subsequently told the court that he didn't have any such heritage, we discern no basis to return the matter to the juvenile court for additional investigation. *Cf. People in Interest of S.B.*, 2020 COA 5, ¶ 22 ("[W]hen grandfather later clarified that he was enrolled in a federally unrecognized tribe, further notice wasn't required and the [court's] previous errors were harmless."), *overruled in part on other grounds by E.A.M.*, 2022 CO 42. We therefore reject father's assertion.

### III. Termination of Parental Rights

¶ 11 Father argues that the juvenile court erred by terminating his parental rights because (1) the Department didn't make reasonable efforts to rehabilitate him and reunify him with the child and (2) he needed additional time to comply with his treatment plan. We disagree.

### A. Termination Criteria and Standard of Review

¶ 12 A juvenile court may terminate parental rights if it finds, by clear and convincing evidence, that (1) the child has been

adjudicated dependent or neglected; (2) the parent hasn't reasonably complied with an appropriate treatment plan or the plan hasn't been successful; (3) the parent is unfit; and (4) the parent's conduct or condition is unlikely to change within a reasonable time. § 19-3-604(1)(c), C.R.S. 2025.

¶ 13    Whether a juvenile court properly terminated parental rights presents a mixed question of law and fact because it involves application of the termination statute to evidentiary facts. *People in Interest of A.M. v. T.M.*, 2021 CO 14, ¶ 15. We review the court's factual findings for clear error, but we review de novo its legal conclusions based on those facts. *People in Interest of S.R.N.J-S.*, 2020 COA 12, ¶ 10. The credibility of the witnesses; sufficiency, probative value, and weight of the evidence; and the inferences and conclusions drawn from the evidence are within the juvenile court's discretion. *People in Interest of A.J.L.*, 243 P.3d 244, 249-50 (Colo. 2010).

## B.    Reasonable Efforts

¶ 14    In determining fitness under section 19-3-604(1)(c), the juvenile court must consider whether the county department of human services made reasonable efforts to rehabilitate the parent

and reunite the family. §§ 19-1-103(114), 19-3-208, 19-3-604(2)(h), C.R.S. 2025. "Reasonable efforts" is defined as the "exercise of diligence and care" to reunify parents with their children, and a department's reasonable efforts obligation is satisfied if it provides services in accordance with section 19-3-208. § 19-1-103(114).

¶ 15 When determined "necessary and appropriate," a department must provide (1) screening, assessments, and individual case plans; (2) home-based family and crisis counseling; (3) information and referral services; (4) family time; and (5) placement services. § 19-3-208(2)(b). The juvenile court should consider whether the services provided were appropriate to support the parent's treatment plan, *People in Interest of S.N-V.*, 300 P.3d 911, 915 (Colo. App. 2011), by "considering the totality of the circumstances and accounting for all services and resources provided to a parent to ensure the completion of the entire treatment plan," *People in Interest of My.K.M. v. V.K.L.*, 2022 CO 35, ¶ 33.

¶ 16 The record supports the juvenile court's finding that the Department made reasonable efforts to rehabilitate father and reunify him with the child. Recall that father's treatment plan required that he (1) comply with his criminal cases and (2) establish

a relationship with the child. Because father didn't need any specific services to comply with the first component, the Department needed only to provide father with services to foster a relationship between him and the child. The evidence shows that

- the Department referred father to a family time provider in July 2024, and visits began in August 2024;

- father sporadically attended visits, stopped attending in September 2024, and was discharged by the provider in October 2024;

- the Department couldn't make another referral after the discharge because the caseworkers couldn't reach father; and

- the current caseworker continued to reach out to father through the only contact information she had for him — an email address — but father never responded to her.

¶ 17    Father doesn't assert that Department failed to provide him with adequate family time or any other specific services necessary to complete his treatment plan. Instead, he contends, for two reasons, that the Department needed to make additional efforts to satisfy its reasonable efforts obligation.

¶ 18 First, father contends that the Department improperly delayed establishing visits between the child and R.M., who lived in Mississippi and is the mother of father's other child. But father doesn't direct us to any authority suggesting that a department fails to make reasonable efforts when it doesn't provide adequate visits between a child and someone other than the parent. And even if the reasonable efforts obligation required the Department to arrange visits between R.M. and the child, we still discern no basis to reverse. The Department offered visits to R.M. because it hoped that she would pass a home study and be able to receive the child into her home, but Mississippi ultimately denied placement. Given this record, father doesn't explain how starting visits with R.M. sooner would have changed the case's outcome. We therefore reject his argument.

¶ 19 Second, father maintains that, to satisfy the reasonable efforts standard, the caseworker needed to provide him with updates about the case and the child in her monthly emails. Notably, father doesn't dispute that the Department made reasonable efforts to attempt to locate and contact him throughout the case. He contends only that the caseworker didn't provide him with updates

about the child during those contacts. But father provides no authority for his position that the reasonable efforts standard requires a particular type of communication at specified intervals from a caseworker. In fact, he concedes that section 19-3-208 doesn't demand such efforts. We therefore discern no basis to reverse the juvenile court's decision.

## C. More Time to Comply

¶ 20    To determine whether the juvenile court erred by declining to give father more time to work on his treatment plan, we consider whether father could have become fit within a reasonable time. In determining whether the parent can become fit within a reasonable time, a court may consider whether any change has occurred during the proceeding, the parent's social history, and the chronic or long-term nature of the parent's conduct or condition. *People in Interest of D.L.C.*, 70 P.3d 584, 588-89 (Colo. App. 2003). The determination of a reasonable period is fact-specific and varies from case to case. *People in Interest of S.Z.S.*, 2022 COA 133, ¶ 25. But a reasonable time isn't an indefinite time, and it must be determined by considering the child's physical, mental, and

emotional conditions and needs. *People in Interest of A.J.*, 143 P.3d 1143, 1152 (Colo. App. 2006).

¶ 21    The record supports the juvenile court's finding that father couldn't become fit within a reasonable time. As noted, the record shows that father didn't consistently participate in family time and hadn't had any contact with the child in almost a year. He didn't otherwise participate in the case or cooperate with the Department. The caseworker opined that father was unfit based on his "lack of engagement in the case" and that he couldn't become fit in a reasonable time given his limited contact with the child and the "substantial amount of time" it would take to "create [a] bond" with the child.

¶ 22    Father doesn't dispute this record or direct us to any evidence suggesting that he could have become fit if given more time to comply. Rather, he asserts that "his goal for the case was not reunification" so long as R.M. raised the child. But once it became clear that R.M. couldn't serve as a placement, father argues, the court should have "given him an opportunity to engage in [the treatment] plan." As described above, the record shows that father had an opportunity to engage but chose not to participate in any

aspect of the case. Under these circumstances, the juvenile court couldn't simply disregard the child's needs and continue the case indefinitely to see whether father might participate. *See S.Z.S.*, ¶ 24 ("Where a parent has made little to no progress on a treatment plan, the juvenile court need not give the parent additional time to comply."). We therefore discern no basis to disturb the court's judgment.

## IV. Disposition

¶ 23 We affirm the judgment.

JUDGE FOX and JUDGE KUHN concur.